GTE ARKANSAS, INC., et al. *v.* ARKANSAS PUBLIC
SERVICE COMMISSION

CA 96-157                                                961 S.W.2d 792

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered February 11, 1998

*Rick Zuker* and *Ivester, Skinner & Camp, P.A.*, by: *H. Edward Skinner*, for appellant.

*Arthur H. Stuenkel*, for appellee.

MARGARET MEADS, Judge. This appeal is brought by GTE Arkansas, Inc., and eighteen other local exchange carriers from Order No. 15 that was entered by the Arkansas Public Service Commission in Docket No. 95-034-TF. In Order No. 15, the Commission revoked a surcharge that it had previously imposed on local exchange ratepayers to fund the costs of implementing telecommunications relay service. Appellants contend that the Commission's decision to eliminate the surcharge is unlawful and ask this court to set aside Order No. 15 and remand the case to the

Commission for further proceedings. Because the issue presented by this appeal is moot, we dismiss.

Telecommunications relay service (TRS) enables individuals with a hearing or speech impairment to communicate with other individuals through a third party by using a relay operator and a telecommunications device for the deaf (TDD). Title IV of the Americans with Disabilities Act (ADA), codified at 47 U.S.C. § 225 (1991), directed the Federal Communications Commission to ensure that interstate and intrastate telecommunications relay services were made available to hearing-impaired and speech-impaired individuals and gave all telecommunications carriers until July 1993 to implement TRS within their service areas. In response to this legislation, the Arkansas Public Service Commission initiated Docket No. 91-051-U to provide a forum for the local exchange carriers (LECs) to comply with the act.

Order No. 4 of Docket No. 91-051-U adopted the Arkansas Telecommunications Relay Center Service Rules (TRS Rules). The TRS Rules provided for the creation of a nonprofit corporation, Arkansas Relay Services, Inc. (ARSI), to administer TRS and to select a vendor to provide TRS in Arkansas. The TRS Rules also established a surcharge to be assessed on customer access lines and remitted to ARSI to fund TRS. The rules further provided that ARSI was to file a report before January 31 of each year to enable the Commission to evaluate the reasonableness of the TRS surcharge rate. In its annual report, ARSI was required to recommend whether the rate should be changed, to specify the rate it believed to be reasonable, and to explain the basis for its recommendation. The surcharge, initially established in July 1992, was twenty-five cents per month per access line. It was later reduced to fifteen cents per month per access line, and in 1994, the surcharge was zero.

ARSI's 1994 report was filed in February 1995 and Docket No. 95-034-TF was thereby created. In May, ARSI petitioned the Commission to reinstitute the TRS surcharge on local telephone bills beginning August 1, 1995, and requested that the TRS surcharge be coordinated with the implementation of the surcharge established by Act 501 of 1995 to fund the Telecommu-

nications Device Distribution Program. In Order No. 8, the Commission responded that ARSI had no responsibility for the equipment surcharge mandated by Act 501 and that ARSI's duties were limited to contracting for a TRS vendor and paying for that service with funds generated by the surcharge. ARSI then asked to be relieved of its duties if its role were limited to the ministerial tasks specified in Order No. 8.

In Order No. 13 entered September 8, 1995, the Commission notified the parties that since the operational TRS system was in place and in light of ARSI's request to be relieved of its duties, it was the appropriate time for the Commission to relinquish its role in relay service operations to those charged by ADA with providing TRS. The Commission stated that it proposed to revoke the TRS Rules as of March 31, 1996, directed ARSI to give notice to MCI (the TRS vendor) that its contract for TRS would be terminated as of March 31, 1996, and notified the LECs that, thereafter, they with the assistance of other common carriers would be responsible for providing TRS in Arkansas, individually, collectively, or through a TRS vendor. The Commission further directed the staff of the Commission (Staff) to calculate the minimum surcharge necessary to fund TRS through March 31, 1996, and to file its recommended surcharge and surcharge termination date by September 19, 1995. The Commission also scheduled a public hearing on the revocation of TRS Rules, the provision of TRS, and the recommended surcharge and surcharge termination date.

After the public hearing, the Commission entered Order No. 15, which is the order being appealed. In this order, the Commission stated that the comments filed in response to its procedural schedule did not contest Staff's calculation of a five-cent–per-access-line TRS surcharge, although several parties had urged the Commission to permanently continue the surcharge; and that, based on Staff's recommendations and the comments received in response to Staff's recommendations, the LECs were directed to amend their tariffs to begin collecting a five-cent-per-line surcharge per month not to exceed four months. The order further provided that the per-line surcharge could not be collected from the ratepayers after March 31, 1996.

Appellants petitioned for rehearing and clarification of Order No. 15, challenging the Commission's decision to terminate the surcharge after March 31, 1996. While their petition was pending, the Commission entered Order No. 18, which revoked the TRS Rules and relieved ARSI of its authority effective March 31, 1996. Order No. 18 further provided that all costs incurred by the common carriers in providing TRS after this date would be subject to recovery through the statutory ratemaking process. Appellants did not petition the Commission to rehear Order No. 18. Order No. 19 denied appellants' petition to rehear and clarify Order No. 15, and this appeal of Order No. 15 followed.

Prior to the submission of this appeal, Act 1080 of 1997 was passed into law. Act 1080 created the Arkansas Deaf and Hearing Impaired Telecommunications Services Corporation to provide TRS and gave it authority to levy assessments on all providers of local exchange service in order to fund the services provided by the corporation. The Act further authorized the LECs to collect the assessment from their ratepayers. As a result of the passage of Act 1080, this court issued a per curiam order on September 10, 1997, asking the parties to file supplemental briefs discussing the impact of the passage of Act 1080 of 1997 on appellants' appeal.

The Commission in its supplemental brief argues that the passage of Act 1080 renders appellants' appeal moot because Act 1080 established a procedure for the recovery of costs associated with the provision of TRS outside of the regulatory process and did not make the recovery of these costs subject to Commission review. Appellants agree that their appeal is moot if Act 1080 is given retroactive effect and they are allowed to impose a surcharge to recover their costs of providing TRS during the period from April 1, 1996, until the date when the Act 1080 surcharge takes effect. Otherwise, they contend that their appeal is not moot because Order No. 15 eliminated the surcharge prior to the Act 1080 surcharge taking effect and, therefore, their rights were adversely affected by Order No. 15.

We agree with the Commission that appellants' appeal of Order No. 15 is moot. The crux of appellants' appeal complains of the Commission's elimination of the TRS surcharge without

providing them a means for concurrent rate relief for continuing to provide TRS except through the statutory ratemaking process. Act 1080 allows the local exchange providers to collect the assessment to fund TRS from its customers. Nevertheless, because an unpaid period still exists between the elimination of the Commission surcharge and the date appellants began assessing the Act 1080 surcharge, appellants continue to argue that they have been injured by Order No. 15.

An issue is moot when it has no legal effect on an existing controversy; it is one in which a decision of the court on appeal could not afford the appellant any relief. *See Bryant v. Arkansas Pub. Serv. Comm'n,* 45 Ark. App. 47, 870 S.W.2d 775 (1994). *See also Dillon v. Twin City Bank,* 325 Ark. 309, 924 S.W.2d 802 (1996). Here, our reversal of Order No. 15 would not afford appellants any relief. The TRS surcharge was zero at the time Order No. 15 was entered, and to reverse that order would eliminate the four-month five-cent surcharge and reinstate the zero surcharge. Order No. 18 not only revoked the TRS Rules that allowed ARSI to recommend a change in the TRS surcharge, but also completely relieved ARSI of its authority as of March 31, 1996; however, appellants have not appealed Order No. 18. Because appellants would not gain any relief by the reversal of Order No. 15, their appeal is moot. As a general rule, the appellate courts do not address moot issues. *Dillon v. Twin City Bank,* 325 Ark. at 312, 924 S.W.2d at 804. Although there are some exceptions, those exceptions do not apply here.

Appeal dismissed.

ROBBINS, C.J., BIRD, STROUD, JENNINGS, and ROAF, JJ., agree.