Stephen MOORE *v.* ARKANSAS DEPARTMENT OF HUMAN SERVICES

97-982                                        969 S.W.2d 186

Supreme Court of Arkansas
Opinion delivered May 21, 1998

*Denny Hyslip*, for appellant.

*Deborah Reagan*, Office of Chief Counsel, for appellee Arkansas Department of Human Services.

*W. Marshall Prettyman*, for appellee Guardian *ad litem*.

W.H. "DUB" ARNOLD, Chief Justice. This is a termination-of-parental-rights case. The appellant, Stephen Moore, is the parent of a son born on November 2, 1993. He appeals an order of the Juvenile Division of Washington County Chancery Court terminating his parental rights with respect to his son. We affirm the order of termination.

On April 6, 1994, appellant's son, then five months old, was taken to the emergency room at Washington Regional Medical Center because he had stopped breathing. Both of his legs were broken. X-rays revealed that the child had a linear skull fracture, bilateral rib fractures, and a healed fracture of the upper arm. At the time, the child had been living with his mother, June Moore, and the appellant. A subsequent investigation resulted in both

criminal and civil proceedings. The criminal proceeding resulted in the appellant's conviction for first-degree battery, for which he was sentenced to twenty-eight years' imprisonment. The civil proceeding, which is the subject of the present appeal, was initiated by the appellee, Arkansas Department of Human Services ("DHS"), which, in April of 1994, filed a petition for emergency custody of the child in the Juvenile Division of Washington County Chancery Court, asserting that the child was dependent-neglected as defined in Ark. Code Ann. § 9-27-303 (Repl. 1993). The chancery court entered an order granting DHS emergency custody of the child on April 11, 1994.

Following a hearing on May 23, 1994, the child was adjudicated dependent-neglected. Specifically, the chancery court determined that the child was the victim of "battered child syndrome" and "failure to thrive." The chancery court approved the case plan developed by DHS. The stated goal of the case was the reunification and rehabilitation of the family. Ms. Moore was offered increased visitation with her son in accordance with her counselor's recommendations. Both Ms. Moore and the appellant were ordered to submit affidavits of financial means, to comply with the case plan, and to sign any releases necessary for reports, evaluations, and counseling sessions so that they could be released to the court and all parties.

Following a review hearing on January 18, 1995, the chancery court entered an order on March 2, 1995, continuing custody of the child with DHS. While the chancery court found that the DHS, the child, and Ms. Moore were in compliance with the case plan, it concluded that the appellant was not in compliance with the plan. The court approved trial placement of the child with Ms. Moore, while ordering her to continue counseling.

After a review hearing on May 31, 1995, the chancery court entered an order on June 26, 1995, approving DHS's case plan and the return of custody of the child to Ms. Moore. The chancery court found that Ms. Moore was in compliance with the case plan in that she had completed a psychological evaluation, had cooperated with DHS, was continuing weekly counseling, had signed releases, had maintained stable housing and employment for over

six months, had allowed the caseworker into her home, had provided DHS with a copy of her financial earnings, had taken the child to a licensed day-care provider, and had provided DHS with a copy of her divorce decree. The court further determined that the appellant was not in compliance with the case plan or prior court orders in that he had failed to submit documentation of his psychological evaluation or counseling on the issue of child abuse, and that he had not met any objectives since he had begun serving his prison term. The chancery court ordered the appellant to participate and complete the case plan for which services were available at the prison facility.

On April 3, 1996, DHS filed a petition to terminate appellant's parental rights. The petition stated that the child had been adjudicated dependent-neglected as a result of neglect and abuse that was perpetrated by the appellant, who had been sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the child's life. The petition further stated that the appellant had willfully failed to provide significant material support in accordance with his means, and that he had failed to maintain meaningful contact with the child. At a hearing on the petition, the appellant objected on the grounds that the Ark. Code Ann. § 9-27-341 (Supp. 1995), the termination-of-parental-rights statute, required the child to be in the custody of DHS.

Because custody of the child was with Ms. Moore, the appellant argued that DHS could not proceed to terminate his parental rights and that the Juvenile Division of Washington County Chancery Court had no jurisdiction to proceed. Over the appellant's objection, the chancery court entered an order terminating the appellant's parental rights on April 10, 1997. On this date, the chancery court entered a separate order allowing DHS to close its protective-services case and dismissing the action. This appeal followed.

At the time DHS filed its petition to terminate the appellant's parental rights on April 3, 1996, the relevant statute, Ark. Code Ann. § 9-27-341 (Supp. 1995), provided in part that:

> (b) The court may consider a petition to terminate parental rights if it finds *that the Department of Human Services has physical or*

*legal custody of the juvenile,* and appropriate placement for the juvenile and the parent or parents, or putative parent, if the putative parent can be identified, have received actual or constructive notice of the hearing to terminate parental rights . . .

(Emphasis added.) However, prior to the entry of the chancery court's order in the present case, the General Assembly amended § 9-27-341 by passing Act 1227 of 1997, which eliminated the requirement that DHS have physical or legal custody of the child before the chancery court could consider a petition filed by DHS to terminate parental rights. Section 9-27-341, as amended, provides in relevant part:

(a) This section shall be a remedy available only to the Department of Human Services or a court-appointed attorney ad litem. It shall not be available for private litigants or other agencies. It shall be used only in such cases when the Department of Human Services is attempting to clear a juvenile for permanent placement. *The intent of this section is to provide permanency in a juvenile's life in all instances where return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare,* and it appears from the evidence that return to the family home cannot be accomplished in a reasonable period of time.

(b) The court may consider a petition to terminate parental rights if there is an *appropriate permanency placement plan* for the juvenile. The petitioner shall provide the parent, parents, or putative parent(s) actual or constructive notice of a petition to terminate parental rights. An order forever terminating parental rights shall be based upon a finding by clear and convincing evidence:

(1) That it is in the best interest of the juvenile, including consideration of the following factors:

. . .

(B) *The potential harm caused by continuing contact with the parent,* parents, or putative parent;

(2) Of one (1) or more of the following grounds:

. . .

(F) *The juvenile court has found the juvenile victim dependent-neglected as a result of neglect or abuse that could endanger the life of the child,* sexual abuse, or sexual exploitation, and which was perpetrated by the juvenile's parent or parents. Such findings by the juvenile court shall constitute grounds for

immediate termination of the parental rights of one (1) or both of the parents;

. . .

(H)(I) *The parent is sentenced in a criminal proceeding for a period of time which would constitute a substantial period of the juvenile's life* and the conditions in subdivision (b)(2)(A) or (B) of this section have also been established.

(Emphasis added.) Act 1227 of 1997 was signed into law by the Governor on April 7, 1997. The Act contained an emergency clause and thus became effective on April 7, 1997. The chancery court's order terminating the appellant's parental rights was filed on April 10, 1997, after the new Act became effective. Thus, as the new Act was in effect at the time the appellant's parental rights were terminated, we must reject his argument that DHS was required to have physical or legal custody of the child in order to proceed under § 9-27-341.

Even if we were to agree with the appellant's argument, we would affirm due to our conclusion that DHS in fact had legal custody of the child until the chancery court dismissed DHS's case on April 10, 1997. The statute in question, § 9-27-341, must be read in harmony with Ark. Code Ann. § 9-27-338 (Supp. 1997), which mandates a permanency planning hearing, providing in pertinent part that:

(a) Twelve (12) months after the date the juvenile enters an out-of-home placement as defined by § 9-27-303(26), or earlier if ordered by the court, *the court shall hold a permanency planning hearing in order to enter a new disposition in the case. At the hearing, based upon the facts of the case, the court shall enter one (1) of the following dispositions in accordance with the best interests of the juvenile:*

*(1) Return the juvenile to the parent,* guardian, or custodian[.]

(Emphasis added.) Under § 9-27-341(b), a chancery court may only consider a petition to terminate parental rights "if there is an appropriate permanency placement plan" for the juvenile. The "appropriate permanency placement plan" utilized by DHS in the present case was the return of the child to the mother, June Moore. This plan is among those listed in § 9-27-338. In our view, DHS continued to have legal custody of the child in the

present case until April 10, 1997, when the chancery court entered an order permitting DHS to close its protective-services case and dismissed the action.

■ We conclude that the chancery court appropriately found clear and convincing evidence that the child was dependent-neglected as a result of abuse that was perpetrated by the appellant, who had been sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the child's life. Based on the foregoing, we affirm the termination of parental rights.

Affirmed.