Mike WILSON, Olan Ashbury, Johnny Mass and Mike McNew *v.* PULASKI ASSOCIATION OF CLASSROOM TEACHERS, Deen Minton, President, Lois Hughes, Vice President, and Sandra Roy

96-1048                                                    954 S.W.2d 221

Supreme Court of Arkansas
Opinion delivered October 23, 1997

*Ramsay, Bridgforth, Harrelson & Starling*, by: *Spencer F. Robin-son*, for appellants.

*Roachell Law Firm,* by: *Richard W. Roachell,* for appellee.

W.H. "Dub" Arnold, Chief Justice. This action was filed by Mike Wilson and a group of taxpayers of Pulaski County Special School District who have children in the Pulaski County School District against the Pulaski Association of Classroom Teachers, the collective bargaining representative of certified employees of the school district. Appellants filed a lawsuit challenging the legality of a teachers' strike.

A teachers' strike began on August 19, 1996. On August 23, 1996, appellants filed suit in the Pulaski County Chancery Court seeking a preliminary injunction to stop the strike. A hearing was held on August 23, 1996. The chancery court denied the preliminary injunction based upon the findings that appellants did not meet the burden of proving that a teachers' strike was illegal and that the appellants did not meet the burden of proving irreparable harm.

On August 28, 1996, a federal district court, through its jurisdiction over Pulaski county and the teachers association in a suit regarding Pulaski County desegregation, enjoined the strike and ordered the parties to mediate. Following this order, the strike ended.

Despite the ending of the strike, appellants' challenge the chancellor's denial of the preliminary injunction claiming that the chancellor erred by failing to find that a teachers' strike is illegal *per se* pursuant to Arkansas law and that due to this illegality, the preliminary injunction should have been ordered. As a procedural matter for granting preliminary injunctions, appellants contend that a showing of irreparable harm is not necessary in instances where an activity is illegal *per se.* Appellants do not challenge the finding by the chancellor that they did not prove that they had suffered irreparable harm. We do not agree with appellants' characterization of the standard for granting preliminary injunctions and affirm the chancellor's denial of the preliminary injunction.

Appellee challenged the jurisdiction of this court based upon the doctrine of mootness relying upon the traditional rule that this court will not render advisory opinions. It is true that

appellants have requested an order from this court enjoining a teachers' strike in the event that the teachers attempt to strike again in the future. This is speculative in nature, and no one knows if the teachers will ever do such. It is well settled that this court does not render advisory opinions nor answer academic questions. *See, Saunders v. Neuse*, 320 Ark. 547, 898 S.W.2d 43 (1995); *Dougan v. Gray*, 318 Ark. 6, 884 S.W.2d 239 (1994); *Walker v. McCuen*, 318 Ark. 508, 886 S.W.2d 577 (1994); *Gladden v. Bucy*, 299 Ark. 523, 772 S.W.2d 612 (1989); and *Neely v. Barber*, 288 Ark. 384, 706 S.W.2d 358 (1986).

■ Under Arkansas law, a case becomes moot when any judgment rendered would have no practical legal effect on an existing legal controversy. *Dillon v. Twin City Bank*, 325 Ark. 309, 924 S.W.2d 802 (1996); *Arkansas Intercollegiate Conference v. Parnham*, 309 Ark. 170, 828 S.W.2d 828 (1992). An exception to the mootness doctrine, however, allows review for appeals involving the public interest and the prevention of future litigation. *Richie v. Board of Educ.*, 326 Ark. 587, 933 S.W.2d 375 (1996); *Duhon v. Gravett*, 302 Ark. 358, 790 S.W.2d 155 (1990). Although the teachers' strike ended over one year ago, it is clear that the ability of public employees to withhold their services involves a question of significant public interest, the resolution of which would certainly preclude future litigation.

Appellants urge this court to recognize that it has already declared strikes by public employees to be illegal *per se* in *Potts v. Hay*, 229 Ark. 830, 318 S.W.2d (1958), and *City of Ft. Smith v. No. 38, AFL-CIO*, 245 Ark. 409, 433 S.W.2d 153 (1968). The right of public employees to strike was not the issue in those cases. We will note, however, that there is *dicta* in those cases which states that such strikes are illegal in Arkansas, but neither of these cases directly addresses the issue of whether a teachers' strike or a strike by public employees is legal. Nevertheless, even assuming that the categorical statements in those cases about public strikes answers the illegal–strike question, appellants still cannot succeed.

■ An order granting or denying a preliminary injunction is within the chancery court's discretion. *McCuen v. Harris*, 321 Ark. 458, 466, 902 S.W.2d 793 (1995). *See also, Smith v. American*

*Trucking Ass'n,* 300 Ark. 594, 781 S.W.2d 3 (1989); *American Trucking Ass'n v. Gray,* 280 Ark. 258, 675 S.W.2d 207 (1983). We will not reverse a chancellor's ruling on a preliminary injunction unless there has been an abuse of discretion. *Smith v. American Trucking Ass'n, supra; Scrivner v. Portis Mercantile Co.,* 220 Ark. 814, 250 S.W.2d 119 (1952); Riggs v. Hill, 201 Ark. 206, 144 S.W.2d 26 (1940).

■ Arkansas Rules of Civil Procedure, Rule 65(a)(1) provides that, where a preliminary injunction is to be given without notice to the adversary of the one requesting it, it must be alleged by affidavit or verified complaint that, absent the injunction, irreparable harm will result to the appellant. Where notice is given, the rule contemplates that a hearing will be held at which such irreparable harm must be shown. The prospect of irreparable harm or lack of an otherwise adequate remedy is the foundation of the power to issue injunctive relief. *See, Amalgamated Clothing v. Earle Indus., Inc.,* 318 Ark. 524, 886 S.W.2d 594 (1994); *Paccar Financial Corp. v. Hummell,* 270 Ark. 876, 878, 606 S.W.2d 384 (Ark. App. 1980). *See also, Ahrent v. Sprague,* 139 Ark. 416, 214 S.W. 68 (1919); *Ex Parte Foster,* 11 Ark. 304 (1850)

■■ This court has previously explained the jurisdiction of equity with respect to public employees as follows:

> There is no doubt but that equity will exercise jurisdiction to restrain acts or threatened acts of public corporations or of public officers, boards, or commissions which are *ultra vires* and beyond the scope of their authority, or which constitute a violation of their official duty, whenever the execut[i]on of such acts would cause irreparable injury to, or destroy rights and privileges of, the complainant, which are cognizable in equity, and for the protection of which we would have no adequate remedy at law.

*Jensen v. Radio Broadcasting Co., Inc.,* 208 Ark. 517, 520, 186 S.W.2d 931, 932 (1945). Clearly, for equity to act, there must be proof of (1) irreparable harm and (2) no adequate remedy at law. *See, East Poinsett Sch. Dist. No. 14 v. Massey,* 317 Ark. 219, 876 S.W.2d 573 (1994).

Thus, in order for a chancellor to grant a preliminary injunction, the moving party must establish irreparable harm; this is true

in all instances where injunctive relief is sought regardless of whether the party may additionally prove that an activity is illegal *per se*. In this case, appellants are precluded from establishing that the chancellor abused her discretion because they do not challenge her ruling that no irreparable harm had been suffered. Indeed, they contend that the strike was illegal *per se* and that this factor alone supports injunctive relief. For over a century, this court has required proof of facts establishing that the moving party is entitled to injunctive relief from a court of equity. *See, e.g., Foster Ex Parte*, 11 Ark. 304 (1850)(requiring proof of irreparable harm to enjoin a trespass). Appellants make no attempt to prove irreparable harm. In effect, they ask us to change this court's longstanding posture on equity jurisdiction without the support of any convincing legal authority. Under such circumstances, this court has, and should, decline to do so. *See, e.g., Qualls v. Ferritor*, 329 Ark. 235, 947 S.W.2d 10 (1997); *Porter v. Harshfield*, 329 Ark. 130, 948 S.W.2d 83 (1997).

Because appellants failed to prove irreparable harm, we affirm the chancellor's order.

Affirmed.

GLAZE, J., dissents.

CORBIN, J., concurs in part and dissents in part.

IMBER, J., not participating.

DON DONNER, Special Justice, concurs in part and dissents in part.

DONALD L. CORBIN, Justice, concurring in part and dissenting in part. While I agree with the majority that the chancellor correctly denied Appellants' request for an injunction, as Appellants have not challenged the chancellor's finding that they failed to make a showing of irreparable harm, I disagree with the majority's refusal to reach the merits of Appellants' claim that strikes by public employees are illegal in Arkansas.

The majority's refusal to address the merits of this argument is predicated on the ground that the issue is moot, apparently because the strike had ended prior to this appeal. I believe, how-

ever, that this issue falls within one of the exceptions to the mootness doctrine recognized by this court. Where considerations of public interest or the prevention of future litigation are present, this court may choose to elect to settle an issue, even though moot. *Duhon v. Gravett*, 302 Ark. 358, 790 S.W.2d 155 (1990). The issue of whether teachers, being public employees, may strike against their government employers, is an issue of significant public interest that must be addressed by this court in light of the two decisions rendered in *Potts v. Hay*, 229 Ark. 830, 318 S.W.2d 826 (1958), and *City of Fort Smith v. No. 38, AFL-CIO*, 245 Ark. 409, 433 S.W.2d 153 (1968).

In *Potts*, this court addressed the issue of whether police officers could be denied employment on the basis of their membership in a union. One of the arguments raised by the appellants was that police officers should not be permitted to belong to unions because the public interest would suffer in the event the officers were allowed to exert "union pressure" upon their employer, the city of Little Rock. As the chancellor in the present case correctly observed, the reference in *Potts* to "union pressure" was actually a reference to strikes against the city. In an effort to assure the appellants that no such union pressure would be permitted under the law, this court cited two cases from other jurisdictions, which provided that public employees may seek union membership, but that there is no right of public employees to strike against the government. *See Norwalk Teachers' Ass'n v. Board of Education*, 83 A.2d 482 (1951); *Beverly v. City of Dallas*, 292 S.W.2d 172 (Tex. Civ. App. 1956).

In *City of Fort Smith*, the issue presented was whether a municipality could be required to engage in collective bargaining with its union employees. Notwithstanding that issue's resolution, this court made clear in the first sentence of the opinion that strikes by public employees were illegal, stating:

> Under Amendment 34 to the Arkansas Constitution municipal employees have the right to belong to labor unions, *but they do not have the right to strike against the government. Potts v. Hay*, 229 Ark. 830, 318 S.W.2d 826 (1958).

245 Ark. at 410, 433 S.W.2d at 154 (emphasis added).

Although I do not dispute the majority's characterization of the above-recited language as *dicta*, in that it was not the ultimate holding of the case, I cannot ignore the fact that the language is unequivocal and is, at the very minimum, persuasive authority for the proposition that strikes by public employees are illegal. Unless this court is prepared to overrule those two decisions, they must be recognized for what they have clearly stated — that there is no right of public employees to strike against the government.

Because I believe this issue should be put to rest one way or the other, in the interest of avoiding future strikes and the litigation that inevitably follows, I must dissent from the majority's refusal to reach the merits of Appellants' argument. Given this court's reluctance to address this important issue, I strongly urge the General Assembly to consider this matter at its next session.

DON DONNER, Sp.J., joins in this opinion.

TOM GLAZE, Justice, dissenting. In my view, the court is wrong in refusing to address the merits of this case. It unquestionably has the discretion to do so. This issue concerning the validity of striking school teachers has now occurred at least twice in Pulaski County, since I have served on this court.[1] On both occasions, the strikes ended before this court was asked to decide their validity.

Teachers, students, parents, and taxpayers should be apprised concerning the validity of such strikes, so when a dispute arises again, the participating parties can pursue what they know is a lawful course of action and Arkansas citizens can predictably measure its outcome. Until this court grapples with and decides whether teachers may strike against their public employer, confusion and uncertainty will continue to prevail in the management of our schools. That is not a happy prospect.

---

[1] In oral argument, counsel for appellees said that he had been involved in four other public strike cases and in two of those, chancery judges had found it was not clearly illegal for public employees to strike. Those cases were not later appealed and decided by this court.