
# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV–16–836

| | |
|---|---|
| STEVEN WAIT<br><br>APPELLANT<br><br>V.<br><br>SPENCER ELMEN, INDIVIDUALLY AND IN A DERIVATIVE CAPACITY FOR JACKIE, LLC, AND SODAKCO, LLC<br>APPELLEES | **Opinion Delivered:** November 29, 2017<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION [NO. 60CV-15-5793]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br>REVERSED AND REMANDED WITH INSTRUCTIONS |

## PHILLIP T. WHITEAKER, Judge

The appellee, Spencer Elmen, and the appellant, Steven Wait, are business partners. Elmen sought an injunction removing Wait from the management of a business.[1] The Pulaski County Circuit Court granted a preliminary injunction. Wait appeals, arguing, among other things, that the circuit court erred in granting the preliminary injunction without a proper showing of both irreparable harm and likely success on the merits. We agree that the circuit court abused its discretion. We reverse and remand for further proceedings consistent with this opinion.

---

[1]Elmen also sued on behalf of separate appellees Jackie, LLC (Jackie), and Sodakco, LLC (Sodakco).

I. *Background*

Elmen and Wait are members with equal 30 percent interests in two Arkansas limited liability companies—appellees Jackie, LLC, and Sodakco, LLC. Wait's mother and stepfather, Barbara Wait and Edwin "Ted" Ellem, each own 20 percent interests in Jackie and Sodakco. Under the terms of the LLC operating agreements, Elmen and Wait were designated managers. Wait was designated president, and Elmen was designated chief operating officer. Jackie and Sodakco operate a business under the name Cupid's Lingerie (Cupid's) in Jacksonville.[2] Sodakco owns the real estate, while Jackie operates the store on the Sodakco property. Wait is the manager of this location.

Elmen, believing that Wait was diverting company assets for personal use, filed suit individually and derivatively on behalf of both Jackie and Sodakco against Wait.[3] Elmen alleged causes of action for conversion, breach of contract, fraud, gross negligence, and breach of fiduciary duty. Elmen sought monetary damages. He later filed a motion for preliminary injunction seeking injunctive relief in the form of removing Wait from any management role in the companies and requiring him to provide a full accounting of the financial affairs of the companies.

---

[2]Elmen, Wait, Barbara Wait, and Ellem also operate "Cupid's" stores at other locations. These other stores operate under different corporate entities with varying ownership interests. These entities are not parties to this case, and any disputes concerning them are not germane to this appeal.

[3]The operating agreements of both Jackie and Sodakco require members to indemnify the companies for losses resulting from the gross negligence or willful misconduct of the member.

Wait filed an answer denying all liability. Wait also raised affirmative defenses, including that Elmen could not maintain a derivative action because he had failed to secure the affirmative vote of more than one-half of the members of each company—as required by Arkansas Code Annotated section 4-32-1102 (Repl. 2016)—to authorize Elmen to file a lawsuit on behalf of each LLC.

The circuit court held a hearing on the motion for preliminary injunction. The court received evidence of the Cupid's entities' operations at all locations. These entities had a ten-year history of bounced checks in the "thousands," resulting in the return of inventory because it could not be paid for and in some cases vendors requiring either a credit card, a cashier's check, or cash on delivery. Elmen and Wait developed a pattern of transferring money from one store to another on a daily basis in order to keep checks from bouncing. They did so through Misty Hill, an employee who provides payroll and bookkeeping services for all of the Cupid's stores. Additionally, Hill testified that she would forge Elmen's or Wait's signatures on checks so that they would not realize when a company check was written and that she had paid herself additional salary above her authorized salary. Elmen and Wait were unaware of these extra payments.

The court also heard undisputed evidence that the personal expenses for both Elmen and Wait were paid from the various Cupid's entities.[4] These expenses included car payments, house payments, utility payments, insurance payments, and fringe benefits. In

---

[4]Wait did not dispute that his personal expenses were paid by the Cupid's entities; he did dispute the amounts of the payments. The Cupid's entities also paid some of the personal expenses of Barbara Wait and Ellem but not to the same extent as those paid for Elmen or Wait.

addition to these expenses, Elmen withdrew $100,000 from the various Cupid's entities to pay part of a $550,000 settlement with a former business partner and took money to help pay a personal tax lien in favor of the IRS of over $100,000.

At the conclusion of the hearing, the circuit court ruled from the bench and subsequently entered an order granting the motion. The court barred Wait from any role in the administration, operation, management, banking, and financial affairs of either Jackie or Sodakco. The order also prohibited the companies from making any loans or paying any distributions or bonuses to the members and prohibited the comingling of assets or debt from the Jacksonville store with any other Cupid's store. The court further ordered the immediate suspension of salary payments to both Wait and Elmen. This appeal follows.

## II. *Standard of Review*

In determining whether to issue a preliminary injunction pursuant to Civil Procedure Rule 65, the circuit court must consider two things: (1) whether irreparable harm will result in the absence of an injunction or restraining order and (2) whether the moving party has demonstrated a likelihood of success on the merits. *Baptist Health v. Murphy*, 365 Ark. 115, 226 S.W.3d 800 (2006); *Three Sisters Petroleum, Inc. v. Langley*, 348 Ark. 167, 72 S.W.3d 95 (2002). The circuit court may make factual findings that lead to conclusions of irreparable harm and likelihood of success on the merits, and those findings shall not be set aside unless clearly erroneous. *See Baptist Health*, *supra*. This court reviews the grant of a preliminary injunction under an abuse–of–discretion standard. *Id*.



III. *Analysis*

A. Irreparable Harm

Our supreme court has held that irreparable harm is "the touchstone of injunctive relief." *United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, 353 Ark. 902, 905–07, 120 S.W.3d 89, 92 (2003) (citing *Wilson v. Pulaski Ass'n of Classroom Teachers*, 330 Ark. 298, 954 S.W.2d 221 (1997) (holding that the prospect of irreparable harm is the foundation of the power to issue injunctive relief)). Further, our supreme court has directed that harm is normally only considered irreparable when it cannot be adequately compensated by money damages or redressed in a court of law. *AJ & K Operating Co., Inc. v. Smith*, 355 Ark. 510, 140 S.W.3d 475 (2004); *Three Sisters Petroleum*, *supra*; *Kreutzer v. Clark*, 271 Ark. 243, 607 S.W.2d 670 (1980).

Elmen filed suit against Wait for several tort claims (fraud, conversion, breach of fiduciary duty, and gross negligence) and for breach of contract. As relief, he requested that he be awarded money damages. Wait argues that the circuit court was wrong in concluding that Elmen would be irreparably harmed if the injunction was not issued. He asserts that there is no irreparable harm in this case, because all of the harm alleged by Elmen can be addressed by a money judgment. We agree.

Essentially, Elmen alleges that Wait has diverted cash from the companies to pay personal expenses for himself and his mother and stepfather. Wait was also alleged to have increased his salary without proper authorization. We find this is the type of financial harm that is quintessentially reparable by money damages. Given the predominance of Elmen's claims for damages, we are hard pressed to conclude that any harm to him cannot be

adequately compensated by money damages. *See Manila Sch. Dist. No. 15 v. Wagner*, 356 Ark. 149, 148 S.W.3d 244 (2004) (holding that a claim for money damages flies in the face of a contention that no adequate remedy at law exists and that irreparable harm will result); *AJ & K Operating Co.*, *supra* (same); *Three Sisters Petroleum*, *supra* (holding that financial harm is not irreparable, as it can be adequately compensated by money damages).

Alternatively, Elmen asserts that the damage to the businesses' reputation could not adequately be addressed by money damages alone. However, our supreme court has held that reputational damage does not constitute irreparable harm sufficient to warrant the granting of a preliminary injunction. *Baptist Health*, *supra*.

Based on the foregoing, we hold that the circuit court abused its discretion in concluding that Elmen had established that irreparable harm would occur in the absence of an injunction. It is therefore not necessary to consider Wait's argument regarding the likelihood that Elmen would succeed on the merits of his suit.[5] *See Manila Sch. Dist. No. 15*, *supra* (holding that a party seeking a preliminary injunction must demonstrate *both* irreparable harm and a likelihood of success on the merits of the suit).

## B. Sua Sponte Relief

Wait argues that the circuit court abused its discretion in issuing a preliminary injunction that granted, sua sponte, relief greater than that requested by Elmen in either his complaint or in the motion for preliminary injunction. In both the complaint and the motion for preliminary injunction, Elmen sought an order barring Wait from any role in

---

[5]We note that the circuit court did not specifically address the likelihood-of-success prong.

the management of the companies; enjoining Wait from self-dealing; and a full accounting of all company information and money spent. The circuit court granted this relief, but went further suspending all salary, distributions, and other payments to both Wait and Elmen.[6]

Our supreme court has held that a circuit court may not entertain injunctive relief sua sponte in the absence of pleadings requesting such relief. *Monticello Healthcare Ctr., LLC v. Goodman*, 2010 Ark. 339, 373 S.W.3d 256. Pursuant to the holding in *Monticello*, the circuit court abused its discretion when it granted sua sponte relief beyond that requested in the pleadings.

We thus reverse and remand to the circuit court with instructions to dissolve the preliminary injunction. The circuit court can conduct such further proceedings as may be necessary.[7]

Reversed and remanded with instructions.

KLAPPENBACH and VAUGHT, JJ., agree.

*The Stuart Firm, P.A.*, by: *Jason A. Stuart*, for appellant.

*Watts, Donovan & Tilley, P.A.*, by: *David M. Donovan* and *Staci Dumas Carson*, for appellees.

---

[6]The court also voided certain corporate resolutions.

[7]Although Wait raises five arguments on appeal, we need not address each argument based on our reversal and remand on the issues set forth in this opinion.